UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT T. CHILDS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:14-CV-2088 NAB |
| | ) |
| KENNY JONES and KAYLA LOCH[1], | ) |
| | ) |
| Respondents. | ) |

### REPORT AND RECOMMENDATION

This matter is before the undersigned on Petitioner Robert Childs' Petition for Writ of Habeas Corpus. [Doc. 1.] Respondent filed a response. [Doc. 9.] This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 5.] For the reasons set forth below, the undersigned recommends that the Petition be denied.

**I.    Background**

In 2010, a grand jury indicted Childs on a charge of Tampering in the First Degree.[2] The indictment charged Childs as a prior and persistent offender, listing two prior felonies: Unlawful Use of a Weapon- Carrying a Concealed Weapon (Cause 0922-CR-2192) and Unlawful Possession of a Weapon (Cause 0922-CR00692). Both of these guilty pleas were dated September 30, 2009. No other convictions or guilty pleas were listed in the indictment.

---

[1] During the pendency of the Petition, Childs was transferred to the Northeast Correctional Center where Chantay Godert is the Warden. [Doc. 14.] Petitioner has since been released on parole by the Board of Probation and Parole and is no longer incarcerated in a correctional facility. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Kenny Jones, Chairman of the Division of Probation and Parole and Kayla Loch, petitioner's probation officer, as the Respondents and remove James Hurley's name.

[2] These facts are taken from the Missouri Court of Appeals' decisions in Childs' direct appeal and post-conviction appeal. (Resp't. Ex. 6 at 2, Resp't Ex. 12 at 2-4.) A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e).

Viewed in the light most favorable to the verdict, the evidence adduced at trial is as follows:  On the morning of January 3, 2010, Jasmine Fisher was in her green 1997 Toyota Camry in front of her home in the City of St. Louis.  Fisher was preparing to leave for work when she realized she left her security badge in her house.  Fisher went back into her home for about thirty seconds, leaving the keys in the ignition.  When she returned outside, her car was missing.  Fisher then called the police and reported the car stolen.

Between 7:00 p.m. and 8:00 p.m. that night, St. Louis Metropolitan Police officers Stephen Walsh and Matthew Karnowski, plainclothes officers with the Anti-Crime Task Force, were working the 5000 block of Davison Avenue.  The officers saw a car matching the description on the department's "hot sheet" of stolen cars.  A check with the dispatcher confirmed the car was still considered stolen.  The car appeared unoccupied, so the officers watched the car from their unmarked vehicle, waiting to see if someone got in.  Although the officers never saw anyone get in the car, the car suddenly drove off.  The officers then followed the car and made a radio call to put out a description of the car and get help in apprehending it.

The officers initially lost sight of the car, but again saw it near Thrush and Lillian.  Other Anti-Crime Task Force detectives were at that location and attempted to deploy spike strips to stop the car.  The car came into contact with the strips, but the strips failed to stop the car.  Shortly thereafter, the car stopped, a passenger got out, and the driver continued on.  At this point, the officers again lost sight of the car.

Meanwhile, Officer Alexander Vogelzang, a uniformed patrol officer in the area, was stopped on an unrelated matter on Ferris Avenue, a one way street, when he saw Fisher's vehicle turn the wrong way onto Ferris.  The car quickly drove directly toward Officer Vogelzang.  At that time Officer Vogelzang identified Childs, whom he knew from numerous encounters in the

area, as the driver and sole occupant of the car. Vogelzang witnessed Childs jump the car onto the curb and drive through front yards of several houses along Ferris Avenue to maneuver around Officer Vogelzang's patrol car. Officer Vogelzang then made a radio call giving a description of the vehicle. After that call, Officer Walsh called Officer Vogelzang's cell phone to ask if he saw the driver, and Vogelzang told him the driver was Childs.

Officers Walsh and Karnowski later found the car in the 4300 block of Darby. The car was parked and unoccupied, with the keys inside. After the car was photographed and checked (unsuccessfully) for fingerprints, the officers called Fisher to come and pick up her car. When Fisher retrieved her car, she noticed some clothing in the back seat that did not belong to her, including a pair of pants. In the back pocket of the pants, Fisher found an ID card with Child's name and address on it. The next day, Childs was arrested at the address on the ID card found in Fisher's car.

Childs' First Degree Tampering trial was held on January 24-25, 2011. The jury returned a guilty verdict. The Court sentenced Childs as a prior and persistent offender to ten years. Childs is currently on parole. Childs filed a direct appeal and a motion for post-conviction review, which were both denied. Childs filed this action on December 19, 2014. [Doc. 1.]

## II.   Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct.

3

1911, 1917 (2013).  The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). Childs is no longer incarcerated, but is under the supervision of the Missouri Department of Probation and Parole.  A person currently released on parole is in custody for purposes of § 2254.  *See Jones v. Cunningham*, 371 U.S. 236, 241-42 (1963) (a person placed on parole is still in custody under an unexpired sentence).

In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings."  28 U.S.C. § 2254(d).  A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.*  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied.  *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

4

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

### III.  Discussion

Childs brings five claims for review. First, he asserts that the trial court erred by allowing a "non-fair" juror to serve on the jury. Second, he asserts that the state failed to properly plead and prove all of the prior felony convictions. His remaining three grounds for relief allege ineffective assistance of trial counsel. Childs asserts that his trial attorney was ineffective for the following reasons: (1) failing to file a motion for trial continuance, (2) failing

5

to obtain photographs to show that Officer Vogelzang's testimony about him driving through yards on Ferris Avenue was not truthful, and (3) failing to object to the introduction of police reports at his sentencing.

### A. Defaulted Grounds

First, the undersigned will address Childs' defaulted claims regarding his status as a prior and persistent offender and his claims regarding trial counsel's failure to seek a continuance. A state prisoner seeking federal habeas relief must first exhaust the remedies available in the courts of the state, thereby affording those courts the first opportunity to address and correct alleged violations of the prisoner's federal rights. *Walker v. Martin,* 562 U.S. 307, 315 (2011).

### 1. Prior and Persistent Offender Status

Childs did not preserve his claim that the state did not adequately plead and prove his status as a prior and persistent offender. The Eighth Circuit Court of Appeals has held that "a federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)). The Missouri Court of Appeals noted that this claim was not properly preserved for review and reviewed it for plain error. This court is barred from reviewing Childs' claim if the state court finds that his claim is defaulted under state law, even if the state court reviewed his claim under plain error review. *Hayes*, 766 F.2d at 1252-53. The burden of justifying federal habeas relief for state prisoners is greater than the plain error showing required on direct appeal. *Id.* at 1253. Therefore, this claim is barred from federal habeas review.

To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the

claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Childs has not provided a cause and actual prejudice for the default or alleged a fundamental miscarriage of justice claim. Therefore, the undersigned recommends that this claim be denied.

### 2. Failure to Seek a Continuance

Next, Childs states that he received ineffective assistance of counsel, because his counsel failed to seek a continuance of trial so that he could locate alibi witnesses. This claim is defaulted, because Childs never presented this claim to any state court. Therefore, there is nothing for the district court to review. Again, Childs has not asserted cause and actual prejudice or a fundamental miscarriage of justice to excuse the procedural default of this claim. The undersigned recommends that this claim be denied.

### B.  Ineffective Assistance of Counsel Claims

Now, the undersigned will review Childs' fully exhausted claims for ineffective assistance of counsel. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of

7

counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694. It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the

8

likelihood of a different result must be substantial not just conceivable." *Id.*  Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

### 1.  Failure to Obtain and Introduce Photographs

Childs contends that his counsel was ineffective, because Officer Vogelzang's testimony that he was driving a car that jumped the curb, drove down the sidewalk, and across front yards on Ferris Avenue was impossible.  Childs asserts that the yards on Ferris Avenue are steep and have stairways with railings that would have damaged the car if he had driven the car as alleged. Childs believes that if trial counsel had introduced photographs showing the actual topography of the street, the jury would have known Officer Vogelzang was lying and found him not guilty.

The Missouri Court of Appeals rejected Childs' claim.  The court of appeals stated that even assuming the photographs of Ferris Avenue contradicted Officer Vogelzang's testimony describing how Childs drove down the street, they would not have provided Childs with a viable defense, because the critical part of Officer Vogelzang's testimony was his identification of Childs as the driver of Fisher's vehicle.  The court of appeals found that the introduction of the photographs would not have contradicted Officer Vogelzang's identification of Childs as the driver and sole occupant of the car.

9

Based on a careful review of the record below, the undersigned finds that this ineffective assistance of counsel claim should be denied.  Childs cannot show that he was prejudiced by the failure to introduce photographs of Ferris Avenue into evidence.  As stated by the court of appeals, the crux of Officer Vogelzang's testimony was that he knew Childs and recognized Childs as the driver of the stolen car.  There is not a substantial likelihood that Childs would not have been convicted if these photographs had been presented as evidence.  *Williams*, 695 F.3d at 831.  In addition to Officer Vogelzang's identification, Childs' ID card and clothing were found in the car by Fisher after the car was returned to her.  The court of appeals' determination was not unreasonable.  Therefore, the undersigned recommends that this claim be denied.

**2.     Failure to object to presentation of police reports at sentencing**

Next, Childs contends that his counsel was ineffective for failing to object to the use of police reports regarding crimes that he had never been convicted of during his sentencing. Childs contends that if these reports had not been introduced at sentencing, he would have received a more lenient sentence.  The Missouri Court of Appeals denied relief on this claim. The court of appeals found that the police reports contained the same information that is "regularly considered by sentencing courts in presentence investigation reports" and therefore, were properly admitted by the trial court.  (Resp't Ex. 12 at 8.)  The court of appeals further found that an objection by trial counsel would have been without merit and counsel's failure to object to admissible evidence is not ineffective assistance of counsel.

Childs' claim should be denied because he is unable to show prejudice.  At the time of the offense at issue in this case, Childs was on probation from three other felony convictions. Due to his previous three felony convictions, there was no substantial likelihood of a more lenient sentence if the police reports had not been entered.  The additional information from the

10

police reports regarding other arrests, while serious allegations, did not outweigh his convictions for unlawful possession of a weapon, unlawful use of a weapon, and felony stealing. The undersigned recommends that this claim be denied.

### C. Biased juror

Finally, Child contends that the trial court erred by allowing a "non-fair" juror to serve on the jury. "The conduct of *voir dire* is generally left to the trial court's sound discretion." *Nicklasson v. Roper*, 491 F.3d 830, 835 (8th Cir. 2007). "*Voir dire* plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge cannot fulfill the responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges." *Ramsey v. Bowersox*, 149 F.3d 749, 756 (8th Cir. 1998) (citing *United States v. Spaar*, 748 F.2d 1249, 1253 (8th Cir. 1984)). "[The] proper test for exclusion of a juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Sweet v. Delo*, 125 F.3d 1144, 1156 (8th Cir. 1997) (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). Deference must be given to the trial judge who sees and hears the juror. *Wainwright*, 469 U.S. at 426.

In this case, the following exchange took place between the prosecutor and venireperson and eventual juror Allen Ray.

> Prosecutor: Is there anyone here, starting with the jury box, who believes that based on your life experiences, things you've heard or know, is there anyone here who would have any difficulty in treating police officers like any other witness, not giving them a presumption on either side, just treating them like anyone else? Starting with the jury box, is there anyone here who would have trouble with that?

11

…

| | |
|---|---|
| Prosecutor: | I'm sorry, Mr. Ray. |
| Juror Ray: | I got a bunch of police officers in my family. |
| Prosecutor: | None of the names I read? |
| Juror Ray: | None of those names. |
| Prosecutor: | And you don't know – do you know any of the police officers whose names I read? |
| Juror Ray: | None of those names you read. |
| Prosecutor: | Can you put out of your mind what you know about the police officers in your family and judge the officers who take the stand fairly and impartially? |
| Juror Ray: | Oh, yeah. |
| Prosecutor: | Like you would any other witness? |
| Juror Ray: | Yes. |
| Prosecutor: | You can be fair? |
| Juror Ray: | Hopefully. |
| Prosecutor: | Well, would you get on a plane if the pilot said he's hopeful he could fly too? |
| Juror Ray: | I'm just telling you the truth. |
| Prosecutor: | I'm trying to pin you down as much as I can. I understand - - I think you used the words carefully; I want to respect that. But I want to make sure that that's what you intend here for the record. Are you still in there with hopeful? |
| Juror Ray: | Yes, sir. |

12

(Resp't Ex. 1 at 35, 37-38.)  Mr. Ray did not raise his hand when the prosecutor later asked if there was anyone who believed there would be anything that would interfere with their ability to be a fair and impartial juror and follow all the Court's instructions.  (Resp't Ex. 1 at 75.)

Then, the following exchange occurred between Mr. Ray and Plaintiff's counsel during voir dire.

> Defense counsel: Do you think when you see the officers who are going to testify in this case, some of them in uniform, some may not be, that you feel some sort of partiality towards them?
>
> Juror Ray: No, not at all.

(Resp't Ex. 1 at 95.)

During the jury selection conference, Childs' defense counsel attempted to strike Mr. Ray for cause, because he had numerous police officers in his family and he stated hopefully he could be fair and impartial.  (Resp't Ex. 1 at 110.)  The trial court judge denied defense counsel's motion to strike Mr. Ray, because the question asked by defense counsel "seemed to rehabilitate him."  (Resp't Ex. 1 at 110.)  The Missouri Court of Appeals denied relief on Childs' appeal regarding this issue.  The court of appeals opinion stated that the record supported the trial judge's denial of Childs' motion to strike, because according to Missouri law, a prospective juror is not disqualified for initially suggesting bias toward police officer testimony, when upon further questioning, he or she unequivocally states his or her ability to be fair and impartial and juror qualifications are to be determined by the entire voir dire examination.  (Resp't Ex. 6 at 7.)

In habeas proceedings, a federal court presumes the correctness of a state court's factual findings unless the petitioner rebuts the presumption with clear and convincing evidence. *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).  "Whether a

13

juror is biased against the defendant is a question of fact, and [the court] will defer to the state court's findings if it is fairly supported in the record." *Williams v. Norris*, 612 F.3d 941, 954 (8th Cir. 2010). "A demonstration of actual bias requires an affirmative statement, an 'equivocal' statement is insufficient." *Williams*, 612 F.3d at 954-55.

Based on a comprehensive review of the entire record, the undersigned finds that the state courts' factual findings were fairly supported in the record. *See Murray v. Delo*, 34 F.3d 1367, 1377 (8th Cir. 1994) (court reviews the entire record not individual responses to determine whether a prospective juror was qualified). It was objectively reasonable for the state courts to find that Mr. Ray had been rehabilitated by defense counsel during voir dire, despite an initial equivocation. The undersigned recommends that this claim be denied.

**IV.   Conclusion**

For the reasons set forth above, the undersigned recommends that Childs' claims for relief be denied. The undersigned finds that the state court's findings and conclusions regarding Childs' claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Because Childs has made no showing of a denial of a constitutional right, the undersigned does not recommend that a certificate of appealability be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall substitute Kenny Jones, Chairman of the Missouri Division of Probation and Parole and Kayla Loch, the parole officer responsible for supervising the petitioner in lieu of James Hurley.

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED**.  [Doc 1.]

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).*

Dated this 2nd day of January, 2018.

　　　　　　　　　　　　　　　　　　　　　　　 /s/ Nannette A. Baker
　　　　　　　　　　　　　　　　　　　　　　NANNETTE A. BAKER
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE